IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CLAUDIE ALLEN *o/b/o T.E.*,      ) | |
|     Plaintiff,            ) | |
|                     ) | |
| **v.**                     ) | CIVIL ACTION NO. 2:19-00622-N |
|                     ) | |
| ANDREW M. SAUL,       ) | |
| *Commissioner of Social Security*,  ) | |
|     Defendant.        ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Claudie Allen, on behalf of minor claimant T.E., brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying T.E.'s application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 12, 13, 15) and those portions of the transcript of the administrative record (Doc. 11) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 1382(a)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of final judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 20). With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 17, 21).

# I.   *Procedural Background*

The subject SSI application was filed with the Social Security Administration ("SSA") on T.E.'s behalf on October 7, 2016. After it was initially denied, T.E. requested, and on June 22, 2018, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On October 15, 2018, the ALJ issued an unfavorable decision on T.E.'s application, finding T.E. not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 11, PageID.51-67).

The Commissioner's decision on T.E.'s application became final when the Appeals Council for the Office of Disability Adjudication and Review denied T.E.'s request for review of the ALJ's unfavorable decision on July 30, 2019. (*Id.*, PageID.45-49). Allen, on T.E.'s behalf, subsequently brought this action under § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007)

("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v.*

*Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3] "Yet, within this narrowly

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that

circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence…" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam) ("A 'substantial evidence' standard … does not permit a court to uphold the [Commissioner]'s decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ.").[4]

---

reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing

---

1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the [Commissioner], and it is well established that no similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." (alterations added) (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792

F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).”). Moreover, an ALJ's decision must “state with at least some measure of clarity the grounds for [the] decision.” *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot “affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]” as “[s]uch an approach would not advance the ends of reasoned decision making.” *Owens*, 748 F.2d at 1516. Rather, “an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself.” *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974)  (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (“The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council.”); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] (“Agency actions … must be upheld on the same bases articulated in the agency's order.” (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for SSI requires that a claimant be “disabled.” 42 U.S.C. § 1382(a)(1)-(2). “An individual under the age of 18 shall be considered disabled … if that individual has a medically determinable physical or mental impairment, which

---

[5] In this circuit, “[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority.” 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) (“Cases printed in the Federal Appendix are cited as persuasive authority.”).

results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(C)(i).[6]

> The Social Security Administration uses a sequential, three-step analysis to determine whether a child is disabled. The claimant must establish (1) whether the child is working; (2) whether the child has a severe impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the Listing of Impairments. 20 C.F.R. § 416.924(a); *id.* Pt. 404, Subpt. P, App. 1…
>
> …To determine whether an impairment or combination of impairments "functionally equals" a listed impairment, the administrative law judge assesses the claimant on six domains, including (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *Id.* §§ 416.926a(a), (b)(1), (d). The claimant must establish that he suffers from an "extreme" limitation in one of the domains, or "marked" limitations in two of the domains. *Id.* § 416.926a(a). A "marked" limitation is one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). " 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*

*Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850-51 (11th Cir. 2015).[7]

"The burden lies with the claimant to prove that he meets or equals a Listing."

*Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x 748, 750 (11th Cir. 2011)

---

[6] "Notwithstanding [§ 1382c(C)](i), no individual under the age of 18 who engages in substantial gainful activity … may be considered to be disabled." 42 U.S.C. § 1382c(C)(ii). *See also* 20 C.F.R. § 416.924(c).

[7] The Court will hereinafter use "Step One," "Step Two," and "Step Three" when referencing individual steps of this sequential evaluation.

(per curiam) (unpublished) (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)). However, "the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.   In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached his decision by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th

Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that T.E. was a "school-age child" who had not engaged in substantial gainful activity since the application date of October 7, 2016. (Doc. 11, PageID.57).[8] At Step Two, the ALJ determined that T.E. had the following severe impairments: borderline intellectual functioning and developmental delay. (Doc. 11, PageID.57). The ALJ also determined that T.E. had the following medically determinable but non-severe impairments: attention-deficit/hyperactivity disorder (ADHD), asthma, and adjustment disorder.[9] (Doc. 11, PageID.57). At Step

---

[8] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing 20 C.F.R. § 416.202–03 (2005)).

[9] For child applicants, a non-severe impairment is "a slight abnormality or a

Three, the ALJ found that T.E. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (*Id.*, PageID.57-67). In determining that T.E. did not functionally equal a Listing, the ALJ found that T.E. had either "less than marked," or no limitation in each of the six relevant domains (*see id.*, PageID.58-67) – thus failing to satisfy the requirement that a child applicant demonstrate either an "extreme" limitation in one of the domains or "marked" limitations in two. Accordingly, the ALJ found that T.E. was not under a disability as defined by the Social Security Act during the relevant adjudicatory period. (*Id.*, PageID.67).

## IV.   *Analysis*

### A.   **Borderline Intellectual Functioning**

Allen's first claim is that the ALJ reversibly erred in finding borderline intellectual functioning as a medically determinable impairment, when no such diagnosis was purportedly in the record, the most recent version of the *Diagnostic and Statistical Manual of Mental Disorders* does not recognize such a condition, and T.E. would not qualify for such a diagnosis under the immediate prior version of the DSM due to having too low an intelligence quotient (IQ) score. No reversible error has been shown.

As the Commissioner correctly points out, the State agency medical

---

combination of slight abnormalities that causes no more than minimal functional limitations…" 20 C.F.R. § 416.924(c).

consultants who reviewed T.E.'s medical file at the initial level, pediatric physician Robert Heilpern, M.D., and psychologist Pauline Edwards, Ph.D., found "borderline intellectual functioning" to be one of T.E.'s severe impairments. The Social Security regulations recognize that "State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation[,]" and ALJs "must consider" those consultants' medical findings as medical opinions, though they are not required to adopt them. 20 C.F.R. § 416.913a(b)(1). *See also* 20 C.F.R. § 416.927(e) (the rules in § 416.913a generally apply to evidence from state agency consultants for claims filed before March 27, 2017). The ALJ considered the State agency consultant's assessment and gave it "significant weight" (Doc. 11, PageID.61), a decision that Allen does not challenge. Accordingly, Allen is incorrect that there was no "psychological expert who diagnosed borderline intellectual functioning," and the ALJ did not "substitute his judgment for that of the medical and vocational experts[,]" as Allen alleges (Doc. 13, PageID.723), in finding that borderline intellectual functioning was a medically determinable impairment.[10]

---

[10] Allen appears to argue that the ALJ should have found that T.E. suffered from "Intellectual Disability," rather than borderline intellectual functioning, because consultative examining psychologist Donald Blanton, Ph.D., diagnosed the former. However, Dr. Blanton also qualified that diagnosis as "mild" and "estimated" (Doc. 11, PageID.544), and as Allen points out, "State agency medical and psychological consultants … may conclude that [a claimant's] obtained IQ score(s) is not an accurate reflection of [the claimant's] general intellectual functioning." 20 C.F.R. § 404, SubPart P, Appendix 1, Listing 12.00(H)(2)(d). Because the State agency consultants diagnosed borderline intellectual functioning, the ALJ had a legitimate medical basis to find that impairment.

### B.    Medical Opinion

Allen next argues that the ALJ reversibly erred in rejecting the medical opinion of consultative examining psychologist Dr. Donald Blanton.

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. "The opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). On the other hand, the opinions of non-treating physicians, such as Dr. Blanton, "are not entitled to deference..." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). *Accord Crawford*, 363 F.3d at 1160 ("The ALJ correctly found that, because Hartig examined Crawford on only one occasion, her opinion was not entitled to great weight.").[11]

Dr. Blanton rendered his medical opinion after performing a consultative psychological evaluation of T.E. on December 28, 2016, at which he assessed a full scale IQ score of 54, "plac[ing T.E.] in the moderate range of mental retardation…" (Doc. 11, PageID.543-546).[12] Dr. Blanton opined that T.E. "may have slightly higher potential if [T.E.'s] attention and concentration problems can be resolved[,]" but that

---

[11] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to the subject application. *Compare* 20 C.F.R. § 416.920c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. § 416.927 (applicable to claims filed before March 27, 2017).

[12] Other medical professionals diagnosed T.E. with an IQ score of 63 on July 14, 2015, and 55 on October 23, 2018.

T.E. "is quite limited intellectually." (*Id.*, PageID.546). The ALJ stated that she gave Dr. Blanton's opinion "little weight because it is not supported by observations and findings noted elsewhere in the record, and is outweighed by the teacher questionnaire [of T.E.'s special education teacher], which is given greater weight." (*Id.*, PageID.61). The ALJ further found that "[t]he very serious deficits identified by [Dr. Blanton] are not fully consistent with the narrative statements of the teacher and are also inconsistent with the observations of [T.E.]'s teacher that [T.E.] picks up on new information pretty well." (*Id.*).

The ALJ summarized the teacher questionnaire (*id.*, PageID.216-225), completed in November 2016, as follows:

> The teacher notes that [T.E.] has several "slight" problems, four "obvious" problems, and only two "very serious" problems ("expressing ideas in written form" and "reading and comprehending written material"), with "no problem following directions". [T.E.] had four "obvious" problems in "attending and completing tasks; the other ten areas the teacher considered involved only a "slight" problem, or no problem at all. [T.E.] had no "serious" or "very serious" problems. [T.E.'s] "obvious" problems were experienced daily, but not hourly. [T.E.] had four "obvious" problems in "in [sic] interacting and relating with others"; the other ten areas the teacher considered involved only a "slight" problem, or no problem at all. [T.E.] had no "serious" or "very serious" problems. [T.E.] had no problems in moving about and manipulating objects, only two "slight" problems in [self-care], and no medical conditions or concerns about health and physical well-being.
>
> There is no mention of ADHD, Autism, or any accommodations. The teacher indicated that she did not know whether the child took any medications, and did not frequently miss school due to illness. In a narrative, the teacher observed: "[T.E.] picks up on new information pretty well, as well as recalls previously learned information well." This evidence is not consistent with very serious functional limitations.

(*Id.* (bracketed text added) (record citation omitted)).

The ALJ did not err in relying on the teacher questionnaire to discount Dr. Blanton's opinion. Contrary to Allen's assertions, the ALJ did not use the teacher questionnaire to discount the IQ score or other objective medical diagnoses of Dr. Blanton, only his opinion on the limiting effects of those diagnoses. *Cf. Moore*, 405 F.3d at 1213 n.6 ("[T]he mere existence of [medical] impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard."). Unlike Dr. Blanton, who only saw T.E. once, the teacher reported that she interacted with T.E. at least three hours every day (*see* Doc. 11, PageID.218), and her questionnaire provided a far more granular assessment of T.E.'s abilities than Dr. Blanton's broad, nonspecific assertion of limited intellectual ability. If an adult claimant's own testimony regarding her daily activities can be grounds to discount a medical opinion, *see, e.g.*, *Phillips*, 357 F.3d at 1241, then certainly a teacher's observations about a child claimant's limitations drawn from daily interaction can be as well.

Allen argues that the teacher questionnaire is unreliable because the teacher's statement that T.E. "picks up on new information pretty well" and "recalls previously learned information well" are contradicted by other findings in the questionnaire – specifically, that the "teacher rates [T.E.] with moderate limitations in learning new material, recalling and applying previously learned material, understanding school and content vocabulary, and applying problem-solving skills in class discussions[;] states [T.E.] has serious problems in comprehending and doing math problems; and

very serious problems in reaching and comprehending written material, and in expressing ideas in written form[;] states T.E. struggled with multi-step directions[;] and indicates T.E. tended to rush through her work, did not understand jokes or sarcasm, and lost patience easily." (Doc. 13, PageID.724-725 (citing Doc. 11, PageID.219-223)). However, the undersigned is not convinced that those finds render the teacher questionnaire fatally inconsistent. Moreover, many of the findings Allen notes were made in response to form circle-the-answer questions providing a set range of answers, while the teacher's statements that T.E. "picks up on new information pretty well" and "recalls previously learned information well" were stated in the teacher's own words in response to an open-ended question asking for any additional information about T.E. (Doc. 11, PageID.219). Thus, the ALJ was entitled to consider those statements as a "truer" reflection of the teacher's opinion on T.E.'s abilities than her pick-an-option responses to form questions. The Social Security regulations give ALJs discretion to reach a conclusion as to disability in spite of inconsistent evidence in the record, *see* 20 C.F.R. § 416.920b(b)(1) ("If the evidence in your case record is insufficient or inconsistent, we may need to take the additional actions in paragraphs (b)(1) through (4) of this section[, including] (1) If any of the evidence in your case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have."), and this Court cannot reweigh the evidence or substitute its judgment for the ALJ's. *Winschel*, 631 F.3d at 1178.

Moreover, the ALJ's decision to reject Dr. Blanton's opinion is also supported by records from West Alabama Mental Health. As the ALJ noted, at a February 2017 examination, T.E. told a therapist that T.E. was enjoying school in spite of difficulty reading at grade level. (Doc. 11, PageID.60). On January 24, 2018, T.E.'s mother reported that T.E. was "doing well academically," and in February 2018 the mother reported that T.E. had "gotten good reports from school" and was having "no problems with grades or behaviors." (*Id.*). At T.E.'s last assessment with West Alabama Mental Health, it was noted that T.E. "had been doing well, enjoying the summer, and … had then been promoted to the 3rd grade." (*Id.*).

As contrary evidence, Allen points to T.E.'s individualized education plans (IEPs) for the 2016-2017 and 2018-2019 school years, noting:

> The IEP for the same school year the teacher completed her form shows [T.E] could not count to 50, had difficulty with addition and subtraction, difficulty recognizing letters, number and shapes, recognizing sight words, and identifying rhyming words. [T.E.] required accommodations for counting, math, fine motor skills, functional behavior, phonological awareness, articulation, and language arts. [T.E] was to work with the resource room and have a peer helper in the general education classroom, along with one-on-one speech therapy. (PageID.283-296, 310-324).

> The IEP for 2018-2019 also contradicts that assertion. At that time T.E. had a difficult time staying on task, tended to rush to be the first to turn in her classwork, and struggled with adding and subtracting, even with the use of manipulatives. (PageID.271). [T.E.] continued to need accommodations for reading, writing, reading recall, counting by 5s and 10s, reading sight words, and knowing when to speak appropriately. (PageID.273-278). [T.E.] was to work with the resource room and have a peer helper in the general education classroom, along with one-on-one help as needed. (PageID.270-282).

(Doc. 13, PageID.725).

While there is no doubt that T.E. has some learning disabilities and other intellectual limitations, the IEPs do not support an escapable conclusion that T.E. is "quite limited intellectually," as Dr. Blanton opined. Especially when considered with the teacher questionnaire and the West Alabama Mental Health, a reasonable adjudicator could conclude that T.E.'s intellectual deficits did not rise to the level of severity opined by Dr. Blanton. A court will not second guess an ALJ about the weight given to medical opinions "so long as [the ALJ] articulates a specific justification for it[,]" *Hunter v. Soc. Sec. Admin., Comm'r*, 0808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore*, 405 F.3d at 1212), and a court must affirm an ALJ's determination so long as substantial evidence supports it, and even if the evidence preponderates against it. *Ingram*, 496 F.3d at 1260. Here, the undersigned finds that substantial evidence supports the ALJ's decision to reject Dr. Blanton's opinion.

## C.    Dr. Reynolds's Treatment Notes

Allen next argues that the ALJ reversibly erred by ignoring evidence in the record from Richard Reynolds, Ph.D., another psychologist who examined T.E. on July 14, 2015, and again on August 6, 2015. (*See* Doc. 11, PageID.340-345).

As noted previously, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell*, 771 F.3d at 782 (quoting *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted)).

Nevertheless, an ALJ must "analyze[] all evidence and … sufficiently explain[] the weight … given to obviously probative exhibits…" *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (alterations added) (quotation omitted).[13]

Allen is correct that the ALJ's decision never expressly discusses, or even mentions, Dr. Reynolds' notes, and the Commissioner does not argue otherwise. However, the undersigned concludes that Dr. Reynolds's notes were not "obviously probative exhibits" that the ALJ was required to explicitly address. Dr. Reynolds last examined T.E. over a year before the start date of the relevant adjudicatory period –

---

[13]     True, as Allen points out, *Cowart* also stated, a couple sentences before this quote, that "[w]hat is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision." 662 F.2d at 735. However, that seemingly broad statement must be read in context. In *Cowart*, the court found that the ALJ's decision did "not make clear the weight accorded to the various testimony considered" because it "state[d] only that the ALJ 'has carefully considered all of the testimony ... and exhibits ... and has given weight to each as he feels should be properly accorded to it.' " *Id.* In finding that statement insufficient, the court explained as follows:

> This statement tells us nothing whatsoever it goes without saying that the ALJ gave the testimony the weight he believed should be accorded to it. What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.

*Id.*
        Read in context, it is apparent that the court was saying the ALJ was required to specifically state the weight he had given to the exhibits he had purportedly considered *in that case*, and to explain his reasoning in doing so. *Cowart*'s subsequent declaration that an ALJ must specifically explain the weight given only to "obviously probative exhibits" is more in line with this circuit's well-established rule that there is "no rigid requirement" that an ALJ's decision specifically reference every piece of evidence in the record. *Dyer*, 395 F.3d at 1211. To the extent Allen argues that *Cowart* requires more, the undersigned is not persuaded.

October 7, 2016, the date the subject application was filed. *See Moore*, 405 F.3d at 1211. Moreover, the full scale IQ score of 63 that Dr. Reynolds assessed was almost ten points higher than the other two IQ scores of record that were assessed during the relevant adjudicatory period, indicating that Dr. Reynolds's notes might not be as relevant to assessing the degree of T.E.'s limitations during the adjudicatory period. *Cf. Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001) ("[A]bsent evidence of sudden trauma that can cause retardation, … IQ tests create a rebuttable presumption of a fairly constant IQ throughout [a claimant's] life.").[14] And contrary to Allen's suggestion, Dr. Reynolds's notes do not substantially bolster Dr. Blanton's opinion that T.E. "is quite limited intellectually." Not only did Dr. Reynolds assess a significantly higher IQ score for T.E. than Dr. Blanton, but Dr. Reynolds's notes also primarily assessed "symptoms of an emotional disorder" (Doc. 11, PageID.341, 343), which were not reflected in Dr. Blanton's notes, and did not mention assessing intellectual limitations. To the extent Dr. Reynolds noted certain objective observations regarding T.E.'s intellectual functioning, those observations were largely consistent with, and thus cumulative of, T.E.'s mother's testimony and observations in notes from the relevant adjudicatory period.

---

[14] The Commissioner's brief devotes a substantial footnote to arguing that Dr. Reynolds should not be considered a treating source. (Doc. 15 n.3, PageID.741-742). However, the undersigned does not read Allen's brief as claiming that Dr. Reynolds should be. While Allen notes in passing that Dr. Reynolds "treated T.E. during the period after [the] alleged [disability] onset date[,]" she identifies Dr. Reynolds as an "examining psychologist," and nowhere does she argue that Dr. Reynolds's notes should be given the heightened consideration generally due to the records of treating sources. The undersigned also, unlike the Commissioner, does not read Allen's brief as arguing that any of Dr. Reynolds's notes should be considered a medical opinion.

Accordingly, the ALJ committed no reversible error in failing to specifically discuss Dr. Reynolds's notes.

### D.    Listing 112.05B

Allen's final claim is that the ALJ erred in not finding that T.E. meets Listing 112.05B (Intellectual Disorder) and is thus disabled. T.E. undoubtedly satisfies the first of the two-part test for disability under that listing, having presented several full scale IQ scores below 70. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.05B(1). However, as the Commissioner correctly points out, T.E. did not satisfy the second part: that T.E. demonstrate "[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: a. Understand, remember, or apply information; or b. Interact with others; or c. Concentrate, persist, or maintain pace; or d. Adapt or manage oneself." *Id.* § 112.05B(2). As noted previously, the ALJ did not find an extreme or marked limitation in any of those domains, and substantial evidence supports the ALJ's decision to reject Dr. Blanton's opinion of severe intellectual disability. To the extent Allen argues this Court should find that T.E. actually has a marked or extreme limitation in one of those domains based on its own review of the record evidence, that is simply an improper invitation for the Court to decide the facts anew or reweigh the evidence, which it may not do. *Winschel*, 631 F.3d at 1178.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying T.E.'s application for benefits is therefore due to be **AFFIRMED**.

### V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying T.E.'s October 7, 2016 SSI application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 23rd day of December 2020.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**